**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA KRASLOW, | Case No. 1:14-cv-01808-SMS |
| Plaintiff, | |
| v. | ORDER REVERSING AND REMANDING AGENCY'S DENIAL OF BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Cynthia Kraslow seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the Court reverses the Commissioner's determination to deny benefits and remands this action to the Administrative Law Judge ("ALJ").

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for SSI on April 19, 2011,[2] alleging disability beginning on May 4, 2010.

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

AR 168.  The Commissioner denied Plaintiff's claim on August 18, 2011, and upon reconsideration on March 13, 2012.  AR 84-85.  Thereafter, she timely requested a hearing.  AR 96.

Plaintiff appeared and testified before an ALJ, Daniel G. Heely, on March 5, 2013.[3]  Also at the hearing were Plaintiff's counsel and an impartial vocational expert ("VE").  AR 45.  In a written decision dated March 14, 2013, the ALJ found Plaintiff was not disabled under the Act.  AR 26.  On September 16, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  AR 1, Doc. 1.

B. *Factual Background*

Plaintiff was born on May 5, 1957.  AR 189.  In a disability report completed on the day she applied for SSI, Plaintiff claimed various medical conditions limited her ability to work.  They included shoulder trauma, numbness of the hands, limited right hand motor skills, sharp left hand pain, loss of balance, and inability to run, jog or walk quickly.  AR 183.

On June 7, 2011, Plaintiff completed an Adult Function Report.  Therein, she stated her daily activities consisted of watching television, taking walks with her dog, and playing games on the computer.  AR 200.  Plaintiff alleged she could no longer use power and hand tools for normal household repairs, tie her shoes without looking, put a necklace on, and do anything that requires coordination.  She used her left arm mostly and struggled with personal care activities such as handling buttons and zippers.  AR 201.  Although it took her longer to prepare daily meals, do the dishes, and laundry, she did them with no help.  AR 202.

Plaintiff's hobbies and interests included watching television, using the computer, landscaping, camping, helping people organize their homes, and repairing and refinishing furniture.

---

[2] The ALJ's written decision states Plaintiff filed for SSI on April 11, 2011.  Her Application Summary reflects a date of April 19, 2011.  AR 168.
[3] Plaintiff appeared without counsel before Judge Heely on November 13, 2012.  The hearing was canceled so that Plaintiff could obtain counsel.  AR 31-34.

2

AR 204. But her engagement in these activities had changed to the extent that she could no longer lift or carry anything with her right arm or use tools with precision. At least twice a month, she went for walks, played computer games, and went shopping with others. Three days a week, Plaintiff also helped a pregnant mom with her daily chores such as vacuuming and cleaning the bathroom. AR 204. Overall, Plaintiff's injuries affected her hand coordination, sense of touch, and ability to hold or lift anything above her hips with her right arm. She could no longer finish what she started. AR 205, 207. In a pain questionnaire also completed in June 7, 2011, Plaintiff stated she could not raise her right arm without assistance due to muscle loss. She no longer had normal motor skills. AR 199.

Plaintiff's second disability report, completed on October 12, 2011, reiterated how Plaintiff's injuries affected her activities. She reported, "I am unable to lift due to lost muscles in my hand shoulder. Rt hand is limited has no strength. I am unable to perform my daily activities." Plaintiff noted that an electromyography ("EMG") showed carpal tunnel in her right hand. 213-214.

Plaintiff completed her last disability report on March 29, 2012. Therein, Plaintiff stated she could no longer carry items, and walk or stand for long periods of time due to back pain. Her hands tingled and felt "wired." She had pressure in her hands, and at times had no feeling in them. She needed to use one hand to assist the other in completing a task, and would drop things. AR 219. As a result of her conditions, Plaintiff took longer to complete her daily activities and needed assistance at times. AR 222.

 1. Medical Evidence

On March 3, 2011, Plaintiff reported to Doctors Medical Center in Modesto, CA complaining of a dog bite and numbness of the hand. AR 253. Dr. Robert Kollen examined Plaintiff and found soft tissue swelling at the right hand dorsum, but no displaced fracture or radiopaque foreign body. AR 250. The dog bite caused right hand cellulitis, but Plaintiff's condition had stabilized and she

was discharged on the same day. AR 254.

On July 26, 2011, Dr. Miguel Hernandez of MDSI Physician Services completed a comprehensive internal medicine evaluation of Plaintiff. He had no records to review. Plaintiff reported being hit with a piece of plastic about a year ago and has since developed pain in her right shoulder, and numbness in her right hand which was spreading to the left hand. She had no problems walking, standing, and sitting. She was able to concentrate, dress, bathe, hold utensils, and open doors and jars. AR 237. Dr. Hernandez found Plaintiff had "decent generalized muscle tone throughout both upper and lower extremities bilaterally," and her motor strength was "5/5 throughout." She was right hand dominant and her sensory examination showed she was "[i]ntact to light touch throughout." AR 239. Dr. Hernandez diagnosed Plaintiff with right shoulder rotator cuff syndrome which was clinically stable. AR 239. Based on objective physical findings, Dr. Hernandez opined that Plaintiff could stand, walk, and sit for six hours, with routine breaks, in an eight-hour day. AR 239. She could lift or carry fifty pounds occasionally and twenty-five pounds frequently. AR 240. Plaintiff had no postural, manipulative or environmental limitations. AR 240.

On August 15, 2011, Dr. Julius Petty, a State agency physician, completed a Physical Residual Functional Capacity Assessment, a check-the-box form, concerning Plaintiff. Dr. Petty opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. She could sit, stand and/or walk for about six hours in an eight-hour workday, and had no limitations in pushing and/or pulling. AR 261. There were no postural, visual, communicative, and environmental limitations. AR 262-264. With regard to manipulation, Plaintiff had no limitations in handling, fingering, and feeling, but was, however, limited in her ability to reach in all directions. AR 263. Dr. Petty reviewed a number of Plaintiff's treatment records: a May 11, 2011, progress note; a May 13, 2011, cervical spine x-ray; a May 24, 2011, cervical spine MRI; and Dr. Hernandez's evaluation. With each record, Dr. Petty recounted some of the findings or impressions.

4

Based on the medical evidence of record, activities of daily living, and pain report, Dr. Petty concluded that Plaintiff's RFC was light and that she was to avoid reaching overhead with her right upper extremity. AR 267.

Also in 2011, Plaintiff saw Dr. Dr. Kou Yang at the Stanislaus County Hughson Medical Office on three occasions: March 17, May 9, and October 26. Dr. Yang diagnosed Plaintiff with spinal stenosis, right shoulder pain and atrophy, and right shoulder weakness with likely rotator cuff syndrome, respectively. He found, during the March 17 examination of Plaintiff's right shoulder, atrophy of the suprascapular muscle, weakness of the biceps, inability to flex and abduct greater than thirty degrees, and positive extension. The May 9 examination of the right rotator muscled revealed atrophy and inability to elevate beyond thirty degrees. And the October 26 examination showed right shoulder and biceps atrophy. AR 273-275.

On August 10, 2011, Plaintiff underwent x-ray and computerized tomography (CT) cervical myelograms, as ordered by Dr. Yang. The x-ray myelogram revealed normal alignment of the cervical spine, but vigorous facet osteoarthrosis. The CT myelogram revealed: normal root and canal distention at C2-C3; minimal left foramina stenosis at C3-C4; mild to moderate central canal stenosis circumferentially at C4-C5; facet osteoarthritis with some uncinate process hypertrophy at C5-C6; moderate facet osteoarthritis without central stenosis at C6-C7; and nothing significant in canal or foramen at C7-S1. Based on the findings, Dr. Yang made two impressions: there was moderate central stenosis at C4-C5 and narrowing of the foramen and lateral recess with underfilling of the nerve roots at C5-C6. AR 242-243.

On February 14, 2012, Dr. Dikran Bairamian from Stanislaus County Health Services evaluated Plaintiff at Dr. Yang's request. AR 283. Dr. Bairamian recounted Plaintiff's history of illness to include a trauma on May 4, 2010 which caused right sided neck and shoulder pain. The pain subsided two months later, but Plaintiff reported feeling a tingling sensation in her hands

thereafter, and was now feeling numbness in the hands up to the elbows. She felt right sided neck pain when laying down on her right side. A physical examination of her extremities showed Plaintiff possessed a full range of motion. Neurologically, Plaintiff was able to oppose with both hands without difficulty. Her sensory was decreased to pinprick from the elbows down. Results of electromyographic studies and nerve conduction studies showed mild carpal tunnel syndrome. On impression, Plaintiff had neck pain with degenerative changes, right C4-C5 stenosis, and peripheral neuropathy in the upper extremities. Dr. Bairamian opined that Plaintiff did not have radicular pain. He directed Plaintiff to obtain physical therapy for her neck pain, and to bring her cervical myelogram and post myelographic CT films at their next meeting. AR 283-284.

At the follow up on April 4, 2012, Dr. Bairamian noted Plaintiff had numbness in her forearms and hands, but no radicular pain, no gait difficulty, and no bowel or bladder dysfunction. He made the same neurological observations as those from their February 14, 2012 meeting. In his view, Plaintiff's cervical myelogram and post myelographic CT, which she provided per his request, were of suboptimal quality, and showed degenerative changes and negligible right C4-C5 and C5-C6 stenosis, respectively. Again, Dr. Bairamian noted on impression that Plaintiff had peripheral neuropathy in the upper extremities. Importantly, he explained to Plaintiff that: (1) the stenosis had no clinical significance as she had no radicular pain in her right upper extremity; (2) physical therapy was unnecessary because she no longer had neck pain; (3) further neurosurgical intervention was unnecessary; (4) she should see a neurologist for peripheral neuropathy; and (5) she was discharged from routine neurosurgical workup. AR 322.

Also in 2012, Plaintiff continued to see Dr. Yang on four occasions: February 23, April 23, June 14, and November 21. He diagnosed Plaintiff with spinal stenosis, sciatica, rectal bleeding, and neuropathy and referred her to neurology. Dr. Yang did not note the same findings on examination as he did in 2011. AR 320, 317, 305, 308.

### 2. Plaintiff's Testimony Before the ALJ

At the time of the hearing, Plaintiff had a twelfth grade education. She last worked as a cashier for K-Mart in 2008 and had been living alone for about six years. AR 48-49. She did not have a driver's license and therefore received rides from a friend. She could do light housework and enjoyed gardening. On average, Plaintiff watched four hours of television and spent five hours on the Internet per day. She could do simple texting. AR 54-55, 57-59.

Plaintiff had numbness and tingling in her hands, carpal tunnel in her right hand, and weakness in her right arm from trauma to her shoulder. AR 50-51. She suffered from constant neck pain and low back every two hours. She could not stand for longer than forty-five minutes at a time and spent more time sitting because of pain in her upper back. She could lift and carry fifteen pounds at most. She was right-handed, but could use her right hand for no longer than fifteen minutes, and required a twenty-minute rest thereafter. Reaching and handling with the right arm were problematic due to weakness. AR 61-65.

Plaintiff did not take medication for her hand and shoulder problems. AR 53. She believed her struggle with standing, lifting, and using her hands—specifically that she could not manipulate her fingers— would pose difficulty with full time work. AR 59-60, 66. If required to stand all day, she would experience a burning sensation between her shoulder blades. She could not reach her right arm across to her left and had to use the latter to control the former. AR 68-69.

### 3. Vocational Expert Testimony

Thomas C. Dachelet, the VE, spoke about Plaintiff's work history. Based on the record, he classified Plaintiff's past jobs to include carpenter, package handler, retail clerk, night manager, and groundkeeper. From these positions, the VE discussed the transferable skills associated with the manager and carpenter positions. AR 70-72, 74.

The ALJ presented the VE with a number of hypotheticals. First, the VE was to consider a

person with the same age, education, work history and transferable skills as Plaintiff, with the addition that such person could sit for six hours but stand and/or walk less than two hours; occasionally lift and/or carry less than ten pounds; never climb, balance, stoop, kneel, crouch or crawl; and needed numerous unscheduled breaks more than an employer would normally allow. When asked if such person could perform any full time job, the VE replied, "No[.]" AR 75. Second, the VE was to consider the same person under the first hypothetical, but such person could sit, stand and walk six out of eight hours with normal breaks for each; lift and/or carry fifty pounds occasionally and twenty-five pounds frequently with the right dominant upper extremity; occasionally reach above shoulder level; could never climb ladders, ropes, or scaffolds; and could never work around hazards like moving dangerous machinery and unprotected heights. When asked if such person could perform Plaintiff's past jobs, the VE opined that such person could perform the retail clerk and night manger jobs. AR 76. Such person could also perform some unskilled jobs in the national economy, including machine packager and laundry-checker. AR 76-77.

Upon further clarification by Plaintiff regarding her prior night manager position, the VE opined the position was in fact that of a retail clerk. AR 80.

4. <u>ALJ's Decision</u>

A claimant is disabled under Title XVI if she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c(a)(3)(A) (2011); 20 C.F.R. 416.905(a) (2011). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[4]

---

[4] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4)

8

In the written decision, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the application date. At step two, Plaintiff had the following severe impairments: degenerative disc disease, arthritis, and carpal tunnel syndrome. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the RFC to perform a wide range of medium work as defined in 20 C.F.R. § 416.967(c). She could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, occasionally reach above shoulder level with the right arm, and never climb ladders, ropes, or scaffolds or work around hazards such as dangerous moving machinery or unprotected heights. And at step four, Plaintiff was capable of performing past relevant work as a retail clerk because it did not require the performance of work-related activities precluded by her RFC. Consequently, the ALJ concluded that Plaintiff was not disabled as defined under the Act. AR 21-26.

## II.  DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner. However, we must consider the entire record

---

whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B.  *Analysis*

1. Residual Functional Capacity

Plaintiff alleges the ALJ's RFC determination was based on legal error and insubstantial evidence.  Specifically, she questions the ALJ's rejection of Dr. Petty's opinion in favor of Dr. Hernandez's where the former's opinion was based on a more complete medical record, and the reasons given for rejecting his opinion were inadequate.  Doc. 16, pp. 7-9.  The Commissioner avers the ALJ properly gave more weight to the opinion which was better supported and more consistent with the record.  Doc. 23, pp. 9-13.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (April 9, 1996) (footnote and citation omitted).  Similarly, "[t]he opinion of an

examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.* (citation omitted).  But an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

In the case of a nonexamining and nontreating physician, their opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).  Their opinion

> can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided . . . .
>
> In appropriate circumstances, [their] opinions may be entitled to greater weight than the opinions of treating or examining sources.  For example . . . [the] opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p.  Their RFC assessments are to "be evaluated considering all of the factors set out in the regulations for considering opinion evidence." *Id*.

The parties do not dispute that Dr. Petty was a nonexamining and nontreating physician.  The ALJ was therefore not required to give Dr. Petty's opinion substantial weight or more weight than Dr. Hernandez's, absent support in the record.  *See id.*

As an initial matter, the record showed Dr. Petty reviewed more of Plaintiff's medical records than did Dr. Hernandez, as evident by the latter's statement that he had no records to review.

11

But, that fact alone does not warrant giving Dr. Petty's opinion greater weight than Dr. Hernandez's. *See id; see also Morgan*, 169 F.3d at 602. In his written decision, the ALJ discussed Dr. Petty's August 15, 2011, RFC assessment and gave it "reduced weight," based on Plaintiff's statements to Dr. Bairamian and her activities of daily living. Specifically, the ALJ stated Plaintiff "advised [Dr. Bairamian] that she did not have neck pain or symptoms in her right arm" and her activities of "walk[ing] with her dog, playing games on the computer, preparing meals, household chores such as washing dishes, shopping for groceries twice per month, helping a pregnant mother 3 times per week, landscaping, camping, repairing and restoring furniture, and helping others organize their homes" exceeded her alleged reduced function. AR 23. From this, Plaintiff faults the ALJ for allegedly mischaracterizing the record and for failing to explain how her activities of daily living contradict Dr. Petty's opinion.

Indeed, contrary to the ALJ's account, Plaintiff made no such statement to Dr. Bairamian. Rather, Plaintiff reported that while her right sided neck and shoulder pain subsided two months after the trauma on May 4, 2010, she started feeling a tingling sensation in her hands, and later numbness of the hands up to the elbows. Plaintiff also reported feeling right sided neck pain when laying down on her right side. The ALJ therefore mischaracterized Plaintiff's statements. With regard to Plaintiff's activities of daily living, the ALJ did not explicitly explain how they exceeded her allegedly reduced function. Yet Plaintiff cites to no authority requiring that an ALJ explicitly explain what can be reasonably inferred. In this case, the ALJ inferred, as he could in making the disability determination, that an individual who engaged in activities of daily living of the kind Plaintiff reported had an RFC beyond light work when viewed together with other evidence in the record. *See* 20 C.F.R. § 416.920 (2011); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. ").

12

But dispositive here is the fact that Dr. Petty's opinion was devoid of analysis and unsupported by other medical opinions. His RFC assessment of Plaintiff appeared in a check-the-box form, which was conclusory and devoid of analysis. Such a form is generally disfavored. *Cf.* 20 C.F.R. § 16.1927(d) (2011) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.") His brief restatement of four treatment records followed by a one sentence conclusion about Plaintiff's RFC contained no explanations of his conclusions. *See* SSR 96-6p. Additionally, Plaintiff concedes that unlike the ALJ, Dr. Petty did not review Dr. Bairamian's February 14, 2012, and April 4, 2012, reports.[5] The ALJ did not rely only on Dr. Hernandez's evaluation alone in making the RFC determination. *See* 20 C.F.R. 416.945 ("We will assess your [RFC] based on all the relevant evidence in your case record.") (2011). The ALJ had before him other medical records including Dr. Yang's treatment notes and radiology imaging reports. While they set forth Plaintiff's issues with her right shoulder and arm, the evidence did not, collectively, support Dr. Petty's conclusions.

For example, Dr. Bairamian found in 2012 that despite her conditions, Plaintiff possessed a full range of motion, could oppose with both hands without difficulty, and had no radicular pain. He opined that Plaintiff no longer had neck pain, and that further neurosurgical intervention was unnecessary. And in his last three examinations of Plaintiff in 2012, Dr. Yang did not make the same findings regarding Plaintiff's atrophy, weakness or inability to flex, as he did in 2011. From these, along with some of Plaintiff's activities of daily living, the ALJ could infer that Plaintiff had the RFC to perform more than light work.

Plaintiff's assertion that the ALJ was unqualified to interpret Dr. Bairamian's opinion runs counter to settled law that an ALJ is tasked with evaluating medical opinion evidence. *See* 20 C.F.R.

---

[5] In her reply, Plaintiff states Dr. Petty did not have the opportunity to review Dr. Bairamian's February 14, 2012, report. Because Dr. Petty completed the RFC assessment on August 15, 2011, he also did not have the opportunity to review Dr. Bairamian's April 4, 2012, report.

§ 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.") (2011). And her assertion that Dr. A Nasrabi, a State agency medical consultant who recommended an RFC of light work, is unpersuasive because, like Dr. Petty, Dr. Nasrabi did not review Dr. Bairamian's April 4, 2012 report.[6]

For these reasons, the ALJ did not err in giving reduced weight to Dr. Petty's conclusions and instead adopting Dr. Hernandez's, in making the RFC determination.

2. Credibility

Plaintiff contends the ALJ erred in his credibility findings by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony concerning numbness of her hands. Doc. 16, pp. 10-12. The Commissioner avers the ALJ made specific findings, supported by the record, which adequately discredited Plaintiff. Doc. 23, pp. 13-19.

As set forth under the Act, a claimant's statements about pain or other symptoms will not alone establish disability. *Id*. at § 416.929 (2011). "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotations omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1014-15; *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir.2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to

---

[6] It is unclear whether Dr. Nasrabadi in fact reviewed Dr. Petty's July 26, 2011 RFC assessment. Dr. Nasrabadi referenced findings found in Dr. Petty's assessment (which were restatements of Dr. Hernandez's findings) but did not cite the July 26, 2011 date. AR 285-287.

14

credibility and stating clear and convincing reasons for each.").

> A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain. General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotations and citations omitted); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). Factors an ALJ may consider include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.*. The ALJ must also give consideration to the factors enumerated in SSR 96-7p.[7]

---

[7] Social Security Ruling 96-7p states, in relevant part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;

Because no evidence suggests Plaintiff was malingering, the ALJ was required to provide specific, clear and convincing reasons for rejecting the pain evidence. Here, the ALJ concluded the medical evidence of record did not support Plaintiff's "allegations regarding either the intensity and persistence of her symptoms or the extent of the resulting functional limitations." AR 22. The ALJ then summarized the various physicians' opinions, treatment records, and results from MRIs and x-rays. AR 22-24. He then found Plaintiff "less than fully credible," and stated, as he did earlier in giving Dr. Petty's opinion reduced weight, that Plaintiff advised Dr. Bairamian she had no neck pain or symptoms in her right arm and that her activities of daily living exceeded her allegedly reduced function. AR 23.

As discussed, the ALJ mischaracterized Plaintiff's statements to Dr. Bairamian. This left the ALJ's summaries of the relevant medical evidence and his statements regarding Plaintiff's activities of daily living as reasons for discrediting Plaintiff's testimony. The problem, however, was that these amounted to general findings, sans analysis. *Brown-Hunter*, 806 F.3d at 494 ("Although the ALJ summarized a significant portion of the administrative record in support of her RFC determination, providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.") (emphasis in original). The ALJ did not specify which of Plaintiff's testimony or statements was not credible. *See id.* at 493; *see also id.* at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the

---

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

16

particular parts of the record supporting her non-credibility determination. This was legal error."). It is unclear how some of the specified activities of daily living undermined Plaintiff's claim of numbness of the hands. Without any reasoning to justify the ALJ's rejection of Plaintiff's credibility, the Court cannot conduct a meaningful review. *See id.* at 492 ("A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") And a lack of reasoning meant the ALJ did not provide specific, clear and convincing reasons for rejecting Plaintiff's testimony and statements about the severity and persistence of her symptoms. The ALJ therefore erred, and such error was not harmless. *See  id.* at 494 ("error is harmless only if it is inconsequential to the ultimate nondisability determination or if despite the legal error, the agency's path may reasonably be discerned. . . . we cannot discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the] testimony to be not credible") (internal quotations and citation omitted).

Finally, in her discussion section concerning credibility, Plaintiff asserts that the ALJ failed to address the severity of Plaintiff's peripheral neuropathy at step two of the five-step sequential process.[8] Doc. 16, pg. 10. She does not provide any argument to support her assertion. *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721(2003) ("he has failed to develop the record and his argument sufficiently to render it capable of assessment by this court"). Moreover, a close reading of the ALJ's decision shows the ALJ in fact considered the peripheral neuropathy. In finding that Plaintiff's severe impairments consisted of degenerative disc disease, arthritis, and carpal tunnel syndrome, the ALJ incorporated by reference his discussion of the RFC determination, which included consideration of

---

[8] The Court is not oblivious to Plaintiff's tendency to sporadically raise issues with no supporting argument in her briefs. Counsel's approach raises questions about the lack of thought and organization required for effective representation, considering the Court's limited resources.

Dr. Bairamian's diagnosis of peripheral neuropathy.  AR 21 ("As discussed in detail below, these impairments cause more than a minimal limitation of the claimant's ability to perform basic work activities."); *see id.* at § 416.923 ("we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").  But Plaintiff presented no evidence establishing severity or duration.  *See* 20 C.F.R. §§ 416.912(c) (2011) (You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."), 416.909 (2011) ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."), 416.921(a) (2011) ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); SSR 85-28, 96-3p.  Plaintiff's assertion is thus meritless.

### C. Remand

"We have discretion to remand for further proceedings or to award benefits.  If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.  Where the Secretary is in a better position than this court to evaluate the evidence, remand is appropriate." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citations and quotations omitted).  Under the circumstances, the Court finds remand appropriate.  *See Brown-Hunter*, 806 F.3d at 495 ("we will not remand for an immediate award of benefits because we are not satisfied that "further administrative proceedings would serve no useful purpose").

It would appear questionable that Plaintiff could engage in medium work with occasional above-shoulder reaching on the right side if the allegations of numbness and loss of feeling in her hands were credible.  On the other hand, the record raises some doubt about the extent to which Plaintiff's symptoms rendered her disabled.  *See id.* at 496.  Plaintiff continued to engage in daily activities even though it took her longer to complete her tasks.  Her evaluation with Dr. Hernandez

revealed sensation which was intact to light touch.  And while he concluded Plaintiff should avoid reaching overhead with her right upper extremity, Dr. Petty opined that Plaintiff had no limitations in handling, fingering and feeling.

The Commissioner shall, on remand, properly address Plaintiff's credibility with regard to her testimony of numbness in making the RFC determination.

### III.  CONCLUSION

Accordingly, the Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  This action is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk of this Court shall enter judgment in favor of Plaintiff, Cynthia Kraslow, and against the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 30, 2016**              **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE